May it please the court. My name is Maureen Scott, and I'm appearing on behalf of the Arizona Corporation Commission in this matter. Mr. Wright from LEVEL 3 has graciously given me three minutes of his time to address the court today. This case started out as a complaint proceeding before the Arizona Corporation Commission. LEVEL 3 alleged to the Corporation Commission that Qwest was not complying with an amendment to its interconnection agreement which pertained to compensation for internet service provider-bound traffic. Judge Bolton's order addressed not only the LEVEL 3 complaint but also a similar complaint by PacWest. However, only LEVEL 3 appealed the determination, and so that is what is before the court today. The Commission did not appeal the order either. The Commission is appearing today as an amicus and has filed an amicus brief. Is it your view of what the court did that it remanded the cases to you for further action? It did, Your Honor. However, if you're going to the issue of whether this is a final, appealable order, I think in looking at the case law that was presented to you, it would be the Commission's position that it is a final order because Judge Bolton ruled on a discreet legal issue, and the orders that are reached by the Commission or the matters that are remanded to the Commission are more in the nature of factual issues that result because of Judge Bolton's ruling. The case presented to you today is one of great difficulty. It's one primarily of contract interpretation. However, within that contract amendment, that amendment applied to traffic as defined in the FCC's ISP remand order. So not only is it one of contract interpretation, but it's also a legal interpretation as to what the FCC meant to include within the definition of ISP-bound traffic, specifically. Well, it's what the parties thought they were including when they made an agreement. Yes, I agree, Your Honor. It's also what the parties intended to include within the agreement. That was actually my question as well, which is whose intent, if we get to the merits, whose intent matters? Is it only the parties, or is it the FCC, or is it both because the parties intended to do whatever the FCC meant? In the Commission's opinion, first and foremost, it was what the parties intended with respect to this amendment. Second, however, it's very important because the FCC's definition of ISP-bound traffic is also very important, because the parties refer to that within their interconnection agreement amendment, and that that is to define what traffic is to be included. And I'm sorry, I have a stop button showing up. Yes, that's your three minutes. Okay, sorry. Thank you very much, Ms. Scott. We'll hear from Mr. Wright. May it please the Court, I'm Christopher Wright, representing Level 3 Communications, and I'd like to reserve three minutes for rebuttal. The issue here today is essentially a contract interpretation issue. What did the parties mean when they agreed for the payment of reciprocal compensation for, quote, ISP-bound traffic as that term is used in the FCC ISP remand order? And while there's a lot of complexity to the matters surrounding this case, I think it boils down to two very simple points that I want to make. First, I thought the Arizona Commission got it just right in its order when it emphasized that the parties said ISP-bound traffic without saying anything about local there. They said ISP-bound traffic without limitation. And then they cited the FCC ISP remand order. That order, in that order, the FCC deleted the word local from its reciprocal compensation regulations. This wasn't some small technical change. It involved taking the word local out of nine regulations where the word local appeared a total of 33 times. So ISP-bound traffic is used without limitation, and then there is a citation to the order that deleted the word local. Well, it's traffic as used in the remand order. Is that what... Right. And in the order, the FCC, perhaps the most important thing about that order is that the FCC deleted the word local, and made clear that it had, in the FCC's opinion, it had made a mistake when it previously concluded that Section 251b-5, the reciprocal compensation provision, is limited to local traffic. But that's a strange way to change the whole scope of what had been dealt with in that order from the start. I mean, you know, its predecessor. And then the trouble the district court had with this was, well, what was it about the remand and then the following remand order that changed things so that they were no longer just talking about local area traffic, but we were somehow now suddenly using the virtual traffic as well? Right. And Quest has made a similar point here. Well, it did what it often does. It did not limit itself on the remand to simply answering the questions that the D.C. Circuit asked it to address in the Bell Atlantic case. It asked for and received additional comment on the scope of Section 251b-5. And it reached a very different decision in the 2001 ISP remand order that is referenced in the contract. And there's nothing in it that specifically includes virtual... No. The FCC did not use VNXX. And it's certainly fair to... And although let me say that it's only in the background sections of the ISP remand order that the FCC talks about local traffic. And that is both an accurate representation of what prior orders had said. Prior orders had said that the reciprocal compensation provision is limited to local traffic. And that was surely the example most on the Commission's mind, was not VNXX traffic. But what the district court told the Arizona Commission to do is clearly wrong and somewhat ironic. In light of the reference to the FCC ISP remand order. The district court didn't say that the Commission reached the wrong decision. It said that what the Arizona Commission needs to do is figure out whether VNXX traffic is local. And I submit that in light of the FCC's deletion of the word local from the reciprocal compensation regulations, the one thing that ought to be perfectly clear is that whether ISP bound... Whether traffic is local has nothing to do with whether it's subject to the reciprocal compensation statute. Counsel, in view of this remand, why do we have jurisdiction? Two separate arguments. The other counsel mentioned it briefly, but... Well, for two separate reasons. One is that, as Judge Posner said in the case we cited, it's actually kind of a misnomer that it's a remand when you have a federal court and a state agency involved. The federal court has technically actually issued an injunction and told the Commission what it thinks it needs to do. I'm sorry, did I interrupt your answer? He had a second point, and I'd like to hear it if I could. And the second point is that in interpreting what a final appealable order is, this court has been somewhat more flexible and limited it to situations where the case has essentially stayed in the district court and you're waiting for some sort of exhaustion type of remedy. In the federal agency to which it was remanded. And this doesn't fit that pattern, and it's also not sensible to hold that this isn't a final appealable order here, where there's an issue presented of whether or not the Commission should determine whether VNXX traffic is local or not. And, again, our main reason to be here today is that that is simply not a relevant inquiry. It would have been a relevant inquiry before the 2001 order. The first time the FCC addressed reciprocal compensation, it said that it only covers local traffic. And before 2001, it would have been relevant. But this contract was negotiated in 2003, after the FCC remand order, and after the WorldCom decision. Which is highly relevant here, because while the D.C. circuit reversed the FCC, it did not quarrel with the idea that 251b-5, the reference to telecommunications, means all telecommunications, local or not. But it did say that all traffic is divided into two categories. Reciprocal compensation and rules grandfathered, traffic that is local or not. Traffic involving rules grandfathered by section 251g, which it described as a transitional provision until the FCC supersedes it. And it said that 251g doesn't cover ISP-bound traffic because, quote, there had been no pre-1996 act obligations relating to inter-carrier compensation for ISP-bound traffic in 1999. That's just as true of VNXX traffic as other forms of ISP-bound traffic. The FCC just didn't address it before the 1996 act. Did I hear you say that the district court didn't say that the corporation commission was wrong? No. Yes. The district court makes very clear in the last couple of pages of its decision that it is not saying what the result should be in this case. Well, it says, the ACC's failure to conduct such an examination led to its conclusion that VNXX was within the definition of ISP-bound traffic, as that term was used in the ISP revamped order. Such an interpretation cannot be supported and is therefore in violation of federal law. That's the district court I'm at. Right, Your Honor. Now I'm looking at page 25 of the excerpt of the records, sort of near the end of the district court's opinion, and the court makes quite clear that it is, quote, no party may rely on this order to argue that a particular result is required. What the district court said is Arizona Commission go back and determine whether VNXX traffic is local. If it's local. Right, but the district, the Arizona Commission on remand may rule that VNXX traffic is local, and therefore level 3 is entitled to reciprocal compensation. See, this is why I get, it seems like your argument is inconsistent with what you said about the jurisdictional point, because on the one hand you say there's no interference with what the Arizona Corporation Commission had done, and it's all up to the commission. The court isn't really doing anything except bouncing it back to the Corporation Commission. And that seems to point in one direction to me versus saying, no, really, it's an injunction, the court has made a final determination on an essential issue, and so we're off and running. I'm not sure how those two things dovetail. Well, you know, our first submission is that it's a misnomer, that this is really an injunction, but the district court clearly was thinking that it had authority to remand. So it has essentially enjoined the commission from giving effect to its judgment, but it has told it how it might cure the situation. All it has done is send it back for a do-over, where the commission has plenary authority to make a decision. It has told the Arizona Commission to do over any way it wants, why is this final until they have acted? And if the court is instead, so that's kind of on the one end, and the other is, if it's done something that is final, what is it? Well, it has told the Arizona Commission that the outcome of this case depends on whether VNXX traffic is local, and that's just wrong. The 2001 FCC order reiterated, as interpreted by the FCC in its 2008 order, makes quite clear that it simply doesn't matter whether this traffic is local. So going back to determine that is simply a waste of everyone's time. And this Court is practical in its decisions about what final appealable judgments are. We've asked a lot of questions, but you're almost out of time. May I reserve my remaining time? Thank you, Your Honors. Good morning, Your Honors. May it please the Court. John Devaney for Quest Corporation. I'd initially like to address the final order discussion that the Court just had with my colleague. Well, there is no doubt that the District Court remanded back to the Commission, requesting the Commission to take further action. It hardly enjoined the Commission from taking further action. In fact, it explicitly instructed the Commission to take further action. With respect to the issue of is this a question of federal law, indeed it is. The parties incorporated the term ISP-bound traffic as used in the ISP order. And the District Court very thoroughly, carefully analyzed the ISP-bound traffic as used in the ISP remand order. And properly concluded that it did not include VNXX calls, which are calls that originate in one local calling area and are terminated in a different local calling area. There are multiple factors that support that conclusion that I would very briefly like to walk through. The first of them being the language of the ISP remand order itself. In the background section, the FCC stated, the question arose whether receiving the ISP remand order in the reciprocal compensation obligations. Which order are you looking at? This is the ISP remand order at paragraph 13. And there, the FCC said, the question arose whether reciprocal compensation obligations apply to the delivery of calls from one LEC's end-user customer to an ISP in the same local calling area that is served by a competing LEC. Importantly, focusing on in the same local calling area. And as we all know, VNXX calls are used in the ISP remand order. VNXX calls are not within the same local calling area. Level 3 points out that that is a statement that is just in the background section. But I submit that the district court properly focused on the fact that that gives the statement even more significance, because the background section sets up the issue to be decided in the proceeding, which is an issue that's limited to local calls in the same local calling area. Where does it leave us if the district court sided with Quest in interpreting the agreement? In other words, that the term, as used in the remand order, referred to just intra-unit calls? Within local calling area, yes. But then, if I understand the opinion correctly, what the district court said was, okay, that's what the agreement says. Now, what's going to happen to the virtual calls is something that I can't determine, the Corporation Commission can decide, maybe. Correct. And, well, what is due under the first part of her order? In other words, she's interpreted the agreement between the parties. What does that cover? What that covers is it tells the Commission that you cannot say that the term ISP pound traffic, as used in the ISP remand order, requires Quest to pay reciprocal compensation for these calls. You cannot say that. And so the remand prohibits the Commission from reaching that conclusion, which is the conclusion that the Commission has reached. Equally important, the D.C. Circuit, which has considered this issue multiple times in the Bell Atlantic order, in the WorldCom order, and most recently in its core decision, each time said that the issue before the FCC and before that court was calls within a local calling area, again, not included. The court also pointed out the FCC has spoken to this issue. In an amicus brief, it's submitted to the First Circuit in the Global NAPPS I case. There, at the invitation of the First Circuit, the FCC spoke to the scope of the order and explicitly told the court that the ISP remand order was limited to calls in the same local calling area, and also that it did not include VNXX calls. Similarly, in the core appeal before the D.C. Circuit, the FCC has said in two briefs filed with that court that this order did not include VNXX calls, and it was limited to calls in the same local calling area. What effect, if any, should the 2008 order have? A couple of responses to that, Your Honor. First of all, the 2008 order doesn't change the landscape at all. It's a limited to calls within the same local calling area. That order is an outgrowth of all the preceding proceedings, including the ISP remand order, and it led up to the ISP, it's called the ISP mandamus order. The scope of traffic nowhere along the way changed. There was no indication or notice from the FCC that it was now suddenly considering a whole new category of traffic. Had it done so silently and without notice, that would have been unlawful. And as a district court said in a similar context, there's no evidence to assume that the FCC acted unlawfully by suddenly expanding the scope of the proceeding. No, but one could look at it the opposite way, too, is that it was clarifying that it had never wanted to define the scope of traffic the way you're asking that it be defined. Well, by contrast, that order also keeps in place Section 251G of the Act, and 251G, as we articulate in our brief, carves out of reciprocal compensation three categories of traffic, exchange access, exchange services for access, and information service. And that order, the 2008 order, makes it very clear that those categories of traffic still exist and are separate from the traffic that's covered by 251B-5. And the FCC, in that decision and in the ISP remand order, makes it clear that the distinction, the historical distinction between local traffic and long-distance traffic is alive and well and pretty much preserved by 251G. And in that regard, Your Honors, this Court's decision in Peavey is quite relevant, because there, this Court, with respect to these very same calls at issue, V and XX calls, affirmed a ruling of the California Commission under federal law that originating access charges were owed on that traffic. The significance of that is originating access charges are owed on that traffic, and originating access charges are not permitted under reciprocal compensation. So this Court has implicitly held that this traffic is not within 251B-5. It also said in that order that this traffic is not within the ISP remand order, because that order is limited to local ISP traffic. The Court's decision in Peavey allowing access charges actually establishes that this traffic is exchange access, which is within 251G and for which access charges have historically been owed. I would like to get back momentarily to this issue of the amicus brief filed by the FCC with the First Circuit. As we cite in our brief, there are multiple decisions from this Court establishing that an amicus brief filed by an agency interpreting one of its regulations is, actually the Court uses the word controlling, as long as it's not a inconsistent with the plain language of the rule. And while this amicus brief was filed with the First Circuit, not with this Court, we submit that that same effect ought to be given to the FCC's statement in the amicus brief, because the FCC participated in the First Circuit proceeding not as a litigant, but as a completely uninterested neutral party that was asked to give its opinion on the scope of the ISP remand order. The District Court also, Your Honors, cited in support of its decision the policy reasons underlying the ISP remand order. And in that order, the FCC devotes a lot of time explaining its very serious concerns about the payment of reciprocal compensation for ISP-bound traffic. And what had happened is competitive local exchange carriers under the Act had built their businesses around serving these Internet service providers and collecting reciprocal compensation from incumbent local exchange carriers like Quest. And it was a significant windfall for them, because all the traffic is one way. You know, Quest callers will place a call to an Internet service provider, but the Internet service provider sends virtually no calls back to Quest. So you have a very inbounce flow of traffic, which resulted in a $2 billion windfall of traffic. At that time, in 2001, of reciprocal compensation to these CLECs. The FCC stepped in to stop that and said, this is unacceptable. We're having the ILECs actually subsidizing the businesses of both the ISPs and the competitive local exchange carriers, and this needs to stop. As the District Court found, given that policy concern, it's entirely inconsistent to conclude that any ISP remand order, the FCC said, oh, and by the way, even though we have all these policy concerns, we're going to throw VNXX traffic into this mix and require ILECs to pay reciprocal compensation on that, too. It just is completely inconsistent with the whole policy underlying the ISP remand order. One more point on the policy issue that I think is very important. If Level 3's position were adopted in this case, we would again have millions of dollars in reciprocal compensation that Quest would have to pay Level 3 for these VNXX calls. The irony of that is Level 3 is relying on Quest's network to carry these, to have these calls initiated so that Level 3 can then carry them to its ISPs. So rather than paying Quest for the use of Quest's network, Level 3 would actually be collecting money from Quest for that. The end result of that is these payments, millions and millions of dollars, would inevitably end up in Quest's local calling rates. And what we would have is you would have customers, literally hundreds of thousands of them, who don't use dial-up Internet at all, subsidizing those who do. Dr. Nancy Cox. Counsel, let me ask you, back to a very basic question of where you started, and a question that I raised with opposing counsel as well. Whose intent are we looking at? Are we looking solely at the party's intent to what they included in this agreement, or are we looking at the FCC's intent, or is it some hybrid that somehow the parties intended whatever the FCC intended, if that makes any sense? It does, Your Honor. Because you're saying, well, the FCC's amicus brief in the First Circuit is controlling, and it certainly may be controlling but how does that help us determine what the parties had in mind? Well, you know, you have to obviously begin with language of the contract. The contract says the parties would be bound by the term ISP bound traffic as that term is used in the FCC ISP order. So that reflects the party's intent to be bound by the definition of that term as defined by the FCC in the ISP remand order. Well, does that stop time so that we don't care what the FCC did in 2008 or whenever it filed the amicus brief? Do we just... To me, that's a very difficult question, and it may only be me that's struggling with it, but... Well, I'm glad you asked that. And it does. It does stop time. First of all, the 2008 decision is entirely consistent with the ISP remand order, but it was not incorporated into the party's contract, even if it were inconsistent. Moreover, this contract that we're talking about actually expired in 2006. So the order that Level 3 is relying upon was issued a full two years after the contract that this dispute concerns actually expired. My other question is that I was not sure how what we're doing here relates to the very last paragraph of the court's order, which was giving the parties 30 days to resolve their dispute. I assume that's a forward-looking question as to the interconnection agreement for the future. Does that interfere in some way with the finality of this, to say, well, here's some things that I think about what this contract means, but you guys go sit down and negotiate where, you know, where you're going? Well, certainly with respect to the prospective relationship of the parties, there's not finality with respect to that. However, with respect to retroactive obligations that Level 3 claims they sued upon, the court's order does affect and dictate the outcome of those obligations and the outcome of Level 3's complaint. And that is, as I said earlier, on remand, this commission cannot say that the ISP remand order requires the payment of compensation for this traffic. Does that answer your question? Well, I think so. You can see the wheels turning. I'm not sure I figured it out, but it did answer my question. What was the basis of the district court's jurisdiction? The district court had jurisdiction under Section 252 E6 of the Act and under federal question jurisdiction. And there's a line of cases establishing not only that district courts have jurisdiction over approval of interconnection agreements, but also have jurisdiction over disputes arising under interconnection agreements. And I believe the site is, as a Supreme Court case, it's the Verizon case. I wish I could remember the second name, but I can't right now. But it's quite clear that district courts have jurisdiction over disputes arising under interconnection agreements. I guess I'm still toying with the idea of finality. The agreement that ended in 2006, that ruling is final, I gather. In other words, the payments are not limited to the district courts. They're not limited by the, you know, there's no further readjustment. That's all done. I'm sorry, I want to make sure I understand your question. Well, I'm trying to see what's final about the district court's order. And I assume that what's final is the obligations that were incurred or not incurred under the agreement that ended in 2006. Yes, with respect to whether those payments are required by the ISP remand order. Right, okay. And that's done and settled by the district court's order? That's done and settled, yes. Then what is there remaining for the commission to do if that's, that's what, this is why I'm, sorry, I'm struggling so much with this, and I'm sure you probably think that I'm dense, but the district court does two things that to me seem inconsistent with finality. One is it sends all this stuff back to the commission to rethink it, to figure out what to do. And secondly, it tells the parties to please go forth and for 30 days negotiate. Those, those don't sound like very final things to me. Well, you know, our view, Your Honor, is that the decision rendered under the contract resolves the matter and that Quest doesn't owe compensation for VNXX. Well, then why was it remanded? What does that mean? I suppose the court may be thinking that the Arizona Commission may want to figure out how to define local versus regional. Local versus non-local traffic, and also the court may decide that some different... If that interpretive issue remains open, why is this final? It doesn't have a completed effect if the definition of whether money is owed or not owed is still an open question. Well, I guess I would reiterate what I said, which is we think it should be final. We don't owe money under this contract, and the district court's decision establishes that. The remand, I suppose the court was envisioning that maybe the commission would come up with some sort of different way of handling this traffic. It's hard for me to explain, but I do think that the decision establishes we are not required to pay for this VNXX traffic under the contract. And under the provision that Level 3 sued upon. And thank you very much for the extra time. I appreciate it. Thank you, Your Honors. Very quickly, Quest has never explained, either here or in its brief, why the commission deleted the word local from its regulations. That's the most critical thing the FCC did in the 2001 order. The 2008 order is relevant only in so far as it sheds light on what the commission meant in 2001. And the 2008 order reiterated that reciprocal compensation, quote, is not limited to local traffic, unquote. And the FCC also said that whether reciprocal compensation is due does not depend on whether a call is, quote, local or long distance, unquote. The best guide to what the FCC thinks should happen in a case like this is its Star Power case, cited in our brief, where the FCC, acting in place of a state commission, in a contract dispute very similar to this, ordered the payment of reciprocal compensation for VNXX traffic. I would welcome a question from the court, since I've used my time, on any other subject, maybe especially including the public. I would like to know if there are any policy arguments that Quest was advancing on which it is wrong. Well, I think, in fairness, you should get a couple of minutes, since we did give your opponent, but help me out with this finality question, too, while you're at it. Well, look, we do think that there is something for the Arizona commission left to do, and again, on page 12, we do think that there is something for the Arizona commission left to do. In page 24 of our first volume of our excerpt of record, the district court said, the ACC may find that VNXX is local, and if it does, level 3 would be entitled to payments from Quest. Now, of course, on the one hand, I welcome the opportunity, if we end up going back there, to try to win under that approach, but we really think that whether VNXX is local or not, is a matter of the court's discretion. And we think that whether VNXX traffic is local or not, is simply irrelevant under the 2001 FCC order cited in the contract that deleted the word local from the reciprocal compensation regulations. No one moved by the policy arguments that Quest advanced? Do you want to give us your 30-second summary? Okay, so when Quest takes a call to its point of interconnection and hands it off to level 3, and level 3 takes it to the internet from there, and through a gateway in the local calling area, that it owes reciprocal compensation. Okay, so when Quest takes it to level 3's point of interconnection, it will owe reciprocal compensation. When a call is VNXX, Quest does the exact same thing. It takes it from the same place to level 3's point of interconnection. What the only difference between what Quest, well, there's no difference between what Quest does. It does the same thing. Level 3, the only thing that matters in a VNXX call is where level 3 takes it. So it deserves more compensation, or deserves any compensation, when it's doing the exact same thing in a VNXX call as in any other kind of call. Thank you, counsel. We appreciate your arguments, and you've been helpful, I think, in helping us sort out these very difficult issues. The case just argued is submitted.
judges: Fletcher B. , Canby, Graber